```
                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND
                            GREENBELT DIVISION


_____
                                       )
UNITED STATES OF AMERICA,              )
                                       )
      Plaintiff,                       )
                                       )Docket Number
            vs.                        )8:19-cr-00348-PX-1
                                       )
ALAKOM-ZED CRAYNE POBRE,               )
                                       )
      Defendant.                       )
_____)
```

                    TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE PAULA XINIS
                 UNITED STATES DISTRICT COURT JUDGE
             Wednesday, October 25, 2023, AT 2:30 P.M.

APPEARANCES:

On Behalf of the Plaintiff:

      GARY MICHAEL MORGAN, JR., ESQUIRE
      6406 Ivy Lane, Suite 800
      Greenbelt, MD 20770
      (301) 344-4433

On Behalf of the Defendant:

      RICHARD A. FINCI, ESQUIRE
      Houlon, Berman, Finci & Levenstein, LLC
      7850 Walker Drive, Suite 160
      Greenbelt, MD 20770
      (301)459-8200

      G. ARTHUR ROBBINS, ESQUIRE
      Chesapeake Meridian
      1997 Annapolis Exchange Parkway, Suite 300
      Annapolis, MD  21401
      (443)454-7675


                        PAULA J. LEEPER
                  Federal Official Court Reporter
            United States District Court, Greenbelt, Maryland

1                    P R O C E E D I N G S

2        (Court called to order.)

3            THE COURT:  Good afternoon.  You all can have a seat.

4        Will the Government call the case?

5            MR. MORGAN:  Calling the case of United States of

6        America v. Alakom-Zed Crayne Pobre; Criminal Case Number

7        PX-19-348.

8        Michael Morgan on behalf of the United States.  Good

9        afternoon, Your Honor.

10            THE COURT:  Good afternoon.

11            MR. FINCI:  Good afternoon, Your Honor.  Richard

12        Finci and Gar Robbins on behalf of Mr. Pobre, present to our

13        left.

14            THE COURT:  Okay.  Good afternoon.  And thank you all

15        for coming in court.  I think the last time we were together, I

16        let you know that I would announce my decision on the motion to

17        suppress based on the search warrant and the *Franks* hearing

18        that we had; I would do so orally.  I'm prepared to do that

19        because I do believe that perfection is the enemy of good, and

20        that if I could get to you a -- my reasoning, even if it's not

21        beautifully penned with every typo and citation correctly

22        cited -- you know, correctly written, it's better for the case.

23        Because the case is going to proceed.

24        I'm going to deny the motions.  And we'll talk about next

25        step.

1     So this is my decision:

2     Presently pending is Mr. Pobre's motion to suppress

3  evidence seized pursuant to a search warrant executed on his

4  home on August 14, 2018.  Mr. Pobre faces charges related to

5  child pornography that were seized from the computers during

6  the search.  This case has been the subject of several hearings

7  and prior decisions, all of which are incorporated in this

8  decision.

9     The Court most recently granted Mr. Pobre a *Franks*

10  hearing, which was conducted on August 11, 2023.  The only

11  remaining issue for the Court to decide is whether the search

12  warrant affidavit materially misled the reviewing court to

13  erroneously find probable cause to believe that the target IP

14  address linked to Mr. Pobre's home had requested three images

15  of child pornography, which I'm going to call throughout the

16  three files of interest.

17     On this score, Mr. Pobre principally contends that the

18  affiant, Corporal Cory Mills, materially omitted from the

19  warrant affidavit that his personal observations of the target

20  IP address were, in fact, the product of two computer programs

21  called Freenet Roundup and ICACCOPS.

22     The omission, Mr. Pobre asserts, had been to leave out any

23  reference to Corporal Mills' use of these computer tools to

24  obtain data about participants of Freenet and their request for

25  suspected child pornography.

1     Relatedly, Mr. Pobre faults Corporal Mills for omitting

2  any information about how the surveillance software works or

3  any explanation for how Corporal Mills concluded that the

4  target IP address requested three files of interest.

5     This, says Mr. Pobre, misled the reviewing judge into

6  believing that Corporal Mills' stated observations were

7  reliable and accurate, when they were not, negating any

8  probable cause to believe that the target IP address had

9  requested the three files of interest more likely than not.

10     Thus, according to Mr. Pobre, the fruits of the search

11  must be suppressed pursuant to *Franks v. Delaware* at 438 U.S.

12  154-155, 1978.

13     *Franks* compels that evidence obtained during a search

14  warrant must be suppressed where two showings are made.  First,

15  that the affiant, quote, intentionally or recklessly made a

16  materially false statement or omitted material information from

17  the affidavit; and, second, those material misstatements or

18  omissions led the reviewing judge to issue the warrant without

19  probable cause to believe the place to be searched contained

20  evidence of a crime.

21     Referencing *United States v. Pulley,* 987 F3.d, 370, 376 to

22  377, Fourth Circuit, 2021, quoting *United States v. Wharton,*

23  840 F3.d 163, 168, Fourth Circuit, 2016.

24     As to the first prong, whether the affiant knowingly or

25  recklessly omitted information material to the probable cause

1  during determination, defendant must show that the affiant was,

2  quote, subjectively aware that the false statement or omission

3  would create a risk of misleading the reviewing magistrate

4  judge, and nevertheless, chose to run that risk.

5        That's from *Pulley* 987 F3.d 377.

6        Omissions must be, quote, designed to mislead, end quote,

7  or, quote, in reckless disregard of whether they would mislead,

8  end quote.  Taken from *United States v. Colkley,* 899 F.2d, 297,

9  301, Fourth Circuit, 1990.

10        As to the second materiality prong, the defendant must

11 show that the omission undermined, quote, the foundational core

12 of the affidavit.  That comes from *Wharton,* 169.  To be

13 material under *Franks,* an omission must do more than

14 potentially affect the probable cause determination.

15        It must, quote, be necessary to the finding of probable

16 cause, coming from *Colkley* at 301.

17        Whereas here, the affiant is accused of omitting

18 information, the Court must add back to the affidavit those

19 facts which the officer knew and omitted and next assess

20 whether the affidavit would still establish probable cause.

21 That's *Wharton,* F3.d at 169.

22        Quote, if the correct -- corrected warrant affidavit still

23 establishes probable cause, there is no *Franks* violation.

24 Also, from *Wharton,* quoting *Miller v. Prince George's County*

25 475 F3.d 621, 628, Fourth Circuit, 2007.

1    From the *Franks* hearing, the Court makes the following

2 factual findings:

3    Corporal Mills confirmed that even though he did not

4 expressly state as much in his affidavit, he used the two

5 computer surveillance programs, ICACCOPS and Freenet Roundup,

6 to develop the information he included in his search warrant

7 affidavit.

8    Corporal Mills' review of the ICACCOPS data revealed that

9 the target IP address had downloaded several distinct blocks of

10 child pornography, or CSAM, that's what we were calling it,

11 suspected child pornography, for three files of interest.

12 Corporal Mills copied that data and pasted it into an Excel

13 spreadsheet tool that is designed to verify that the target IP

14 address had more likely than not requested the three files of

15 interest.

16    I, obviously, collected these factual findings from the

17 hearing itself, from the transcript.  I'm not going to go

18 through and pincite it.

19    The spreadsheet tool generated a, quote, Freenet target

20 summary which indicated that the target IP address was a,

21 quote, pass for all three files of interest.  Corporal Mills

22 understood that a pass meant more likely than not the target IP

23 address had requested each file of interest.

24    Corporal Mills had been trained that he needed three such

25 verified files of interest before he could obtain a warrant

1   based on this information.  Because he had three such files,

2   Corporal Mills prepared his search warrant affidavit and other

3   paperwork to secure the warrant.

4       Corporal Mills also confirmed that he used much of the

5   language from the Freenet target summary in his affidavit

6   nearly word for word.

7       Once Corporal Mills drafted the affidavit using the

8   language from the Freenet target summary, his reviewing

9   supervisor ordered Mills to cut information that the supervisor

10  believed would, quote, confuse, end quote, the reviewing judge.

11      The omitted language read, quote, these 29 blocks

12  represent 97 percent of the even or expected share of the

13  minimum blocks, 2,062, required to download the file, and

14  48 percent of the even or expected share of total blocks,

15  comma, 4,142 available.  And the Freenet node reported an

16  average of 61.1 peers.

17      Corporal Mills testified that he had absolutely no

18  understanding of what this information meant or, in fact, any

19  of the information included in the Freenet target summary.  He

20  also candidly admitted to not knowing how any of the software

21  works, and that he had been trained to simply cut, paste, and

22  plug in the data to the Excel spreadsheet tool.  If he obtained

23  three passing files of interest, then he could reasonably

24  surmise that the target IP address had requested the three

25  files of CSAM, and so he could swear out a warrant.

1    In short, Corporal Mills omitted the facts supporting

2  probable cause to believe the target IP address had requested

3  three files of interest was not based on personal observations

4  but from his use of Freenet Roundup, ICACCOPS, and the Excel

5  spreadsheet tool.

6    Dr. Levine also testified at the hearing, and he explained

7  three things:  First, that Corporal Mills misused the Excel

8  spreadsheet tool in such a way that while Mills had obtained

9  three, quote, pass results, the underlying report appeared to

10  reveal inaccuracies in a spreadsheet tool that did not, in

11  fact, exist.

12    Dr. Levine explained that the spreadsheet tool is designed

13  to confirm that the data collected from ICACCOPS accurately

14  identified a CSAM request from the target IP address.

15    As this Court and everybody here knows -- and I don't

16  believe the defense really meaningfully disputed -- the peer

17  review mathematical algorithm developed by Dr. Levine and his

18  team predicts with 99 percent confidence whether any given IP

19  address had requested CSAM using Freenet.

20    The Excel spreadsheet tool tests the reliability of the

21  algorithm as applied to an actual request.  To receive a pass

22  in the Excel spreadsheet tool, the data must conform to five

23  variables, and the variables were explained both in the written

24  submissions and, to some degree, at the hearing.

25    The bottom line is, if the data does not conform, then the

results generated by his algorithm, as Dr. Levine explained,

and by extension, the Excel spreadsheet, do not have the same

99 percent confidence interval.  As to this, Corporal Mills did

not know how to use the Excel spreadsheet tool to apply certain

filters for requests that he -- that had consistent, quote,

hops to live, or to ensure that all observations are for the

same, quote, node.

And our prior evidentiary hearings and discussions on this

inform those definitions.

Corporate Mills didn't do that and so didn't apply those

filters; thus, even though Corporal Mills had received a pass

for each file of interest, the spreadsheet results in the Mills

affidavit and on which the defense expert relied were simply

erroneous.

And in that regard, the defense expert report from

Mr. Miglianti, I hope I'm saying his name right, attempted to

show that the Excel spreadsheet tool was unreliable by taking

the five criteria that Dr. Levine had identified as hallmarks

of reliability and manipulating the data in the Excel

spreadsheet to use values outside the five criteria.

When the expert did so, he still received a pass finding;

thus, he concluded that the Excel spreadsheet tool did not

reliably verify that the files of interest had been requested

by the target IP address.

However, as Dr. Levine explained, the defense expert made

1   the same mistakes or similar mistakes as Corporal Mills did in

2   not employing the filter function on the spreadsheet tool, and

3   so the expert's conclusion shouldn't be credited.

4       And there really wasn't any credible rebuttal to that, so

5   I accept Dr. Levine's explanation of the difference and what

6   Mr. Miglianti had identified in his report.

7       The second thing that Dr. Levine demonstrated is that if

8   used correctly, the Excel spreadsheet tool confirmed that each

9   of the files of interest more likely than not, Dr. Levine says

10  with 99 percent confidence, came from the target IP address.

11      Third, Dr. Levine also independently applied the

12  mathematical algorithm to the raw data to verify with

13  99 percent confidence that the target IP address had requested

14  three files of interest.  Thus, the Court credits that the

15  affidavit accurately represented that the target IP address,

16  more likely than not, had requested the three files of

17  interest.

18      Based on these factful findings, the Court concludes that

19  Corporal Mills wasn't totally forthright about the nature of

20  his personal observations, and he omitted information relating

21  to the use of the ICACCOPS and Freenet Roundup and Excel

22  spreadsheet tools.

23      Corporal Mills also didn't tell the judge, the reviewing

24  judge, that a computer program, not he, wrote much of the

25  affidavit's substantive language, and that he omitted technical

1   explanations of why the three files of interest likely came
2   from the target IP address.  And those technical explanations
3   were generated by the Freenet target summary.

4        All of this certainly kept from the reviewing court the
5   use of the computer algorithm as a tool central to the probable
6   cause determination.  In the future, law enforcement, in my
7   view, is best advised not to hide such basic information from
8   the Court during the warrant application process.

9        That said, Corporal Mills presented as little more than a
10  poorly trained functionary.  He had no idea how the computer
11  programs worked and relied on the accuracy and reliability of
12  what the databases revealed.  While his level of ignorance in
13  this regard is really surprising, the Court need not ultimately
14  reach whether it amounts to recklessness, and this is because
15  even if Corporal Mills omitted the information with such
16  disregard, in the end, such omissions were not material to the
17  probable cause determination, the second prong.

18       Had Corporal Mills stated in the affidavit that he relied
19  on a computer algorithm whose functions he didn't understand,
20  the magistrate judge may have asked for more information about
21  the workings of the algorithm, just as Mr. Pobre has done
22  throughout these many hearings.

23       But after reviewing the testimony provided by the creator
24  of the algorithm and, obviously, his team and the peer reviewed
25  support, Dr. Levine, the Court determines that the algorithm

1   is, in fact, reliable, and did not result in a false positive

2   in this case.

3       Thus, because the Government has demonstrated that, in

4   fact, and with 99 percent confidence, according to Dr. Levine,

5   the target IP address had requested each of the three files of

6   interest, any such other omissions were not material to that

7   statement that was made in the affidavit.

8       So Corporal Mills' errors and omissions, even if included

9   in the affidavit, would not upset the ultimate conclusion that

10  the target IP address likely requested the three files of

11  interest.

12      In short, the omissions did not negate probable cause to

13  believe the target IP address was the requester of the three

14  files of interest, and so the Court must conclude no *Franks*

15  violation occurred.

16      Last, the Court addresses Mr. Pobre's alternative argument

17  that *Herring v. United States* at 555 U.S. 135, 2009, compels

18  suppression.

19      In *Herring,* the Supreme Court found in dicta that the good

20  faith exception to the exclusionary rule might not apply -- may

21  not apply to police conduct that amounted to, quote, recurring

22  or systemic negligence.  In that situation, the Court suggested

23  that a traditional recklessness determination may not apply

24  because, quote, it might be reckless for officers to rely on an

25  unreliable warrant system, end quote.  And that's at 146.

1      Mr. Pobre tries to extend the dicta to his case, arguing

2   that, quote, if systemic error can be shown to have been

3   present in the data considered in determining probable cause,

4   then analysis of the subjective knowledge of affiant is no

5   longer controlling, end quote.  And that's found at ECF Number

6   107 and 11.

7      Although the Court does not necessarily agree with

8   Mr. Pobre's treatment of *Herring,* it ultimately doesn't matter

9   because the Government has demonstrated that the algorithm and

10  Excel spreadsheet tool, when used properly, are reliable in

11  this case.

12     And, here, correct application of both shows, with a high

13  degree of confidence, that the target IP address was the likely

14  requestor of the three files of interest.  Thus, even though

15  Corporal Mills appears improperly trained on using these

16  investigative tools, a fact of concern to the Court, and which

17  could, one day, make *Herring* squarely relevant, in this matter,

18  Corporal Mills' lack of training did not produce systemic

19  erroneous results that are relevant to this determination

20  because of the previous finding I made that there was no *Franks*

21  violation.

22     Accordingly, for those reasons, Mr. Pobre's motion to

23  suppress at ECF Numbers 45 and 46 is denied.  And we'll docket

24  a paperless order to that effect just adopting my oral ruling.

25     You may all have been discussing, sort of there was two

1   options, I was either going to grant it or deny it, and if I

2   was going to deny it, you may have already discussed next steps

3   in the case.  Or do you need more time?  Because I'm prepared

4   to put in some milestone dates, trial, in limine, put in a

5   scheduling order, if you want.  Or you might need more time to

6   discuss.

7        So you tell me what the next step is, Counsel.

8            MR. FINCI:  We have not discussed.

9            THE COURT:  You haven't?  Okay.

10       So do you want to pick a date now where we get on the line

11  for a status?  It will give you an opportunity to confer

12  amongst yourselves and with each other.  And then at that call,

13  you can tell me what you want to do next.  Does that make

14  sense?

15           MR. FINCI:  Yes, Your Honor.

16           THE COURT:  All right.  We also now -- Mr. Ulander,

17  can you confirm that that resolves all the gavels?  Because if

18  it does, we also have to talk speedy trial, if you all want

19  another status.

20       So while Mr. Ulander is doing that, let's talk about

21  another date.

22       How much time would you like to talk to each other and

23  yourselves before we meet again?

24           MR. FINCI:  Thirty days, Your Honor, is that

25  acceptable?

1          THE COURT:  Yeah, I don't have -- I don't have a

2     problem with that with the understanding that, one, I would

3     need a motion to toll between now and then; and, two, that that

4     would be the date in which we either set it in for

5     re-arraignment or trial.

6        And on that score, so I'm just prepared when we talk

7     again, length of estimated trial?

8          MR. MORGAN:  Um --

9          THE COURT:  I would assume it's not going to be more

10    than a week.  Is that --

11         MR. MORGAN:  No, I think that's -- probably including

12    jury selection, five days, max, I would imagine.

13         MR. FINCI:  Agree.

14         THE COURT:  Would you agree?  Okay.  Yeah.

15       So when we talk again, if we're setting it for trial, I'm

16    looking for a week.

17       Okay.  All right.  So then do you want to do the last week

18    in November?

19         MR. FINCI:  Beg your pardon, Your Honor?

20         THE COURT:  Last week in November?

21         MR. FINCI:  Yes, that would be fine.

22         THE COURT:  Okay.

23         MR. FINCI:  Any -- 27th?  29th?

24         THE COURT:  Is anybody traveling for the holidays?

25         MR. MORGAN:  Your Honor, I -- actually -- I actually

1   will no longer be with the office at that time.

2           THE COURT:  What are you doing to me, Mr. Morgan?

3           MR. MORGAN:  Sorry.

4           THE COURT:  What?  No, no, you're not allowed.  Court

5   order.

6           MR. MORGAN:  I apologize for that, Your Honor.

7       But there, obviously, will be someone else joining the

8   case, and so I think that week should be fine.  But I will --

9   if it's okay with the Court, we can set the date, and just --

10  I'll inform everybody if there's some conflict.

11          THE COURT:  Yeah.

12          MR. MORGAN:  Thank you.

13          THE COURT:  All right.  I'm assuming I'll get the

14  back-story on that.

15      Do you know who the new -- I mean, this case has gone

16  through --

17          MR. FINCI:  Multiple.

18          THE COURT:  -- four AUSAs, I think?  I think we might

19  be on our fourth set.

20          MR. MORGAN:  I think I might be number three, Your

21  Honor.

22          THE COURT:  So we'll be on number four.

23          MR. MORGAN:  Yes, Your Honor.

24          THE COURT:  All right.  Well, whoever takes it over

25  is the United States of America and will be prepared to try it?

1          MR. MORGAN:  Absolutely, Your Honor.

2          THE COURT:  Okay.  All right.

3      When does the defense propose having it?  Because if you

4  all are traveling for Thanksgiving, I want to be mindful of

5  that.

6      I start a trial on the 27th, but it's civil, and I can fit

7  you in.

8          MR. FINCI:  How about the afternoon of the 29th, Your

9  Honor?

10          THE COURT:  Looks good.  I have a pretrial conference

11  at 2:00.  How about 3:00?

12          MR. FINCI:  Thank you, Your Honor.

13          THE COURT:  Okay.  3:00.  We'll make it recorded;

14  3:00 p.m., November 29.

15      And then I -- I expect that there's going to be a motion

16  to toll, but can I get the parties' positions on the record now

17  with regard to tolling a speedy trial until at least that

18  followup status?

19          MR. FINCI:  Of course.  Since it's our request, Your

20  Honor, we have no objection to that 30 days.

21          MR. MORGAN:  Of course, Your Honor, no objection.

22          THE COURT:  Okay.  All right.  And Mr. Pobre, you're

23  doing well on pretrial release.  Keep it up.  No issues in that

24  regard.

25          MR. MORGAN:  No.

1          THE COURT:  So I'll talk to you all again November 29
2   at 3:00.
3          MR. FINCI:  Thank you, Your Honor.
4          MR. MORGAN:  Thank you, Your Honor.
5          THE COURT:  Thank you.
6          COURT DEPUTY:  All rise.  This Honorable Court now
7   stands adjourned.
8       (Court adjourned at 2:59 p.m.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4        I, Paula J. Leeper, Federal Official Court Reporter, in

5   and for the United States District Court for the District of

6   Maryland, do hereby certify, pursuant to 28 U.S.C. § 753, that

7   the foregoing is a true and correct transcript of the

8   stenographically-reported proceedings held in the

9   above-entitled matter and the transcript page format is in

10  conformance with the regulations of the Judicial Conference of

11  the United States.

12

13                             Dated this 4th day of November, 2023.

14

15                             /s/Paula Leeper

16                             _____

17                             Paula J. Leeper
                               Federal Official Reporter

18

19

20

21

22

23

24

25

```
COURT DEPUTY: [1]  18/6
MR. FINCI: [13]  2/25 5/4 5/13
 15/21 15/23 16/17 17/18 17/19 18/3
MR. MORGAN: [13]  2/5 15/8 15/11 15/25 16/3 16/6
 16/12 16/20 16/23 17/1 17/21 17/25 18/4
THE COURT: [24]

/
/s/Paula  [1]  19/15

1
107 [1]  13/6
11 [2]  3/10 13/6
135 [1]  12/17
14 [1]  3/4
146 [1]  12/25
154-155 [1]  4/12
155 [1]  4/12
160 [1]  1/18
163 [1]  4/23
168 [1]  4/23
169 [2]  5/12 5/21
1978 [1]  4/12
1990 [1]  5/9
1997 [1]  1/21

2
2,062 [1]  7/13
2007 [1]  5/25
2009 [1]  12/17
2016 [1]  4/23
2018 [1]  3/4
2021 [1]  4/22
2023 [3]  1/11 3/10 19/12
20770 [2]  1/15 1/19
21401 [1]  1/22
25 [1]  1/11
27th [2]  15/23 17/6
28 [1]  19/6
29 [3]  7/11 17/14 18/1
297 [1]  5/3
29th [2]  15/23 17/8
2:00 [1]  17/11
2:30 [1]  1/11
2:59 [1]  18/8

3
30 [1]  17/20
300 [1]  1/21
301 [4]  1/15 1/19 5/9 5/16
344-4433 [1]  1/15
348 [1]  2/7
370 [1]  4/21
376 [1]  4/21
377 [2]  4/22 5/5
3:00 [3]  17/11 17/13 18/2
3:00 p.m [1]  17/14

4
4,142 [1]  7/15
438 [1]  4/11
443 [1]  1/22
4433 [1]  1/15
45 [1]  13/23
454-7675 [1]  1/22
459-8200 [1]  1/19
46 [1]  13/23
475 [1]  5/25
48 percent [1]  7/14
4th [1]  19/12

5
555 [1]  12/17

6
61.1 [1]  7/16
621 [1]  5/25
626 [1]  5/25
6406 [1]  1/14

7
753 [1]  19/6
7675 [1]  1/22
7850 [1]  1/18

8
800 [1]  1/14
8200 [1]  1/19
840 [1]  4/23
899 [1]  5/8
8:19-cr-00348-PX-1 [1]  1/6

9
97 percent [1]  7/12
987 [2]  4/21 5/5
99 percent [5]  8/18 9/3 10/10 10/13 12/4

A
about [8]  2/24 3/24 4/2 10/19 11/20 14/20 17/8
 17/11
above [1]  19/9
above-entitled [1]  19/9
absolutely [2]  7/17 17/1
accept [1]  10/5
acceptable [1]  14/25
according [2]  4/10 12/4
Accordingly [1]  13/22

accuracy [1]  11/11
accurate [1]  4/7
accused [2]
actual [1]  8/21
actually [2]  15/25 15/25
add [1]  5/18
address [21]
addresses [1]  17/6
adjourned [2]  18/7 18/8
admitted [1]  7/20
adopting [1]  1/7
advised [1]  11/7
affect [1]  5/14
affiant [6]  3/18 4/15 4/24 5/1 5/17 13/4
affidavit [17]  3/12 3/19 4/17 5/12 5/18 5/20 5/22
 6/4 6/7 7/2 7/5 7/7 9/13 10/15 11/18 12/7 12/9
affidavit's [1]  10/25
after [1]  11/23
afternoon [6]  2/3 2/9 2/10 2/11 2/14 17/8
again [4]  14/23 15/7 15/15 18/1
agree [3]  13/7 15/13 15/14
ALAKOM [2]  1/7 2/6
ALAKOM-ZED [1]  1/7 2/6
algorithm [20]  8/17 8/21 9/1 10/12 11/5 11/19
 11/21 11/24 11/25 13/9
all [18]  2/3 2/14 3/7 6/21 9/6 11/4 13/25 14/16
 14/17 14/18 15/17 16/13 16/24 17/2 17/4 17/22 18/1
 18/6
allowed [1]  16/4
already [1]  14/2
also [8]  5/24 7/4 7/20 8/6 10/11 10/23 14/16 14/18
alternative [1]  12/16
Although [1]  13/7
AMERICA [3]  1/4 2/6 16/25
amongst [1]  14/12
amounted [1]  12/21
amounts [1]  11/14
analysis [1]  13/4
Annapolis [2]  1/21 1/22
announce [1]  2/16
another [2]  14/19 14/21
any [10]  3/22 4/2 4/3 4/7 7/18 7/20 8/18 10/4 12/6
 15/23
anybody [1]  15/24
apologize [1]  16/6
APPEARANCES [1]  1/12
appeared [1]  8/9
appears [1]  13/15
application [2]  11/8 13/12
applied [2]  8/21 10/11
apply [5]  9/4 9/10 12/20 12/21 12/23
are [7]  3/7 4/14 9/6 13/10 13/19 16/2 17/4
arguing [1]  13/1
argument [1]  12/16
arraignment [1]  15/5
ARTHUR [1]  1/20
as [13]  4/24 5/10 6/4 8/15 8/21 9/1 9/3 9/18 9/25
 10/1 11/5 11/19 11/21
asked [1]  11/20
asserts [1]  3/22
assess [1]  5/19
assume [1]  15/9
assuming [1]  16/13
attempted [1]  9/16
August [2]  3/4 3/10
August 11 [1]  3/10
August 14 [1]  3/4
AUSAs [1]  16/18
available [1]  7/15
average [1]  7/16
aware [1]  5/2

B
back [2]  5/18 16/14
back-story [1]  16/14
based [4]  2/17 7/1 8/3 10/18
basic [1]  11/7
be [21]
beautifully [1]  2/21
because [11]  2/19 2/23 7/1 11/14 12/3 12/24 13/9
 13/20 14/3 14/17 17/3
been [7]  3/6 3/22 6/24 7/21 9/23 13/2 13/25
before [1]  1/10 6/25 14/23
Beg [1]  15/19
behalf [4]  1/13 1/16 2/8 2/12
believe [7]  2/19 3/13 4/8 4/19 8/2 8/16 12/13
believed [1]  7/10
believing [1]  4/6
Berman [1]  1/18
best [1]  11/7
better [1]  2/22
between [1]  15/3
blocks [4]  6/9 7/11 7/13 7/14
both [2]  8/23 13/12
bottom [1]  8/25

C
call [3]  2/4 3/15 14/12
called [2]  2/2 3/21
calling [2]  2/5 6/10
came [2]  10/10 11/1
can [7]  2/3 13/2 14/13 14/17 16/9 17/6 17/16
candidly [1]  7/20
case [12]  2/4 2/5 2/6 2/22 2/23 3/6 12/2 13/1
 13/11 14/3 16/8 16/15
cause [13]  3/13 4/8 4/19 4/25 5/14 5/16 5/20 5/23
 8/2 11/6 11/17 12/12 13/3
central [1]  11/5
certain [1]  9/4
certainly [1]  11/4
CERTIFICATE [1]  18/9
certify [1]  19/6

charges [1]  3/4
Chesapeake [1]  1/21
chief [2]  6/10 6/11
chose [2]
Circuit [4]  4/22 4/23 5/9 5/25
citation [1]  2/21
cited [1]  2/22
civil [1]  7/3
Colkley [2]  5/8 5/16
collected [2]  6/16 8/13
comes [1]  5/12
coming [2]  2/15 5/16
comma [1]  7/15
compels [2]  4/13 12/17
computer [7]  3/20 3/23 6/5 10/24 11/5 11/10 11/19
computers [1]  3/5
concern [1]  13/16
conclude [1]  12/14
concluded [2]  4/3 9/22
concludes [1]  10/18
conclusion [2]  10/3 12/9
conduct [1]  12/21
conducted [1]  3/10
confer [1]  14/11
conference [3]  1/9 17/10 19/10
confidence [6]  8/18 9/3 10/10 10/13 12/4 13/13
confirm [2]  8/13 14/17
confirmed [3]  6/3 7/14 10/8
conflict [1]  16/10
conform [2]  9/22 9/25
conformance [1]  19/10
confuse [1]  7/10
considered [1]  13/3
consistent [1]  9/5
contained [1]  4/19
contends [1]  3/17
controlling [1]  13/5
copied [1]  6/12
core [1]  5/11
Corporal [27]
Corporate [1]  9/10
correct [3]  5/22 13/12 19/7
corrected [1]  5/22
correctly [2]  2/21 2/22 10/8
Cory [1]  3/13
could [5]  2/20 6/25 7/23 7/25 13/17
Counsel [1]  14/7
County [1]  5/24
course [2]  17/19 17/21
court [30]
cr [1]  1/6
CRAYNE [1]  1/7 2/6
create [1]  5/3
creator [1]  11/23
credible [1]  10/4
credited [1]  10/3
credits [1]  10/14
crime [1]  4/20
Criminal [1]  2/6
criteria [2]  9/18 9/20
CSAM [4]  6/10 7/25 8/14 8/19
cut [2]  7/9 7/21

D
data [10]  3/24 6/8 6/12 7/22 8/13 8/22 8/25 9/19
 10/12 13/3
databases [1]  11/12
date [4]  14/10 14/21 15/4 16/9
Dated [1]  19/12
dates [1]  14/4
days [3]  14/24 15/12 17/20
decide [1]  3/11
decision [3]  2/16 3/1 3/8
decisions [1]  3/7
defendant [4]  1/8 1/16 5/1 5/10
defense [5]  8/16 9/13 9/15 9/25 17/3
definitions [1]  9/9
degree [2]  8/24 13/13
Delaware [1]  4/11
demonstrated [3]  10/7 12/3 13/9
denied [1]  13/23
deny [3]  2/24 14/1 14/2
designed [3]  5/6 6/13 8/12
determination [6]  5/1 5/14 11/6 11/17 12/23 13/19
determines [1]  11/25
determining [1]  13/3
develop [1]  6/6
developed [1]  8/17
dicta [2]  12/19 13/1
did [9]  6/3 8/10 9/3 9/21 9/22 10/1 12/1 12/12
 13/18
didn't [4]  9/10 9/10 10/23 11/19
difference [1]  10/5
discuss [1]  14/6
discussed [2]  14/2 14/8
discussing [1]  13/25
discussions [1]  9/8
disputed [1]  8/16
disregard [2]  5/7 17/16
distinct [1]  6/9
DISTRICT [1]  1/1 1/1 1/10 1/25 19/5 19/5
DIVISION [1]  1/2
do [13]  2/18 2/18 2/19 5/13 9/2 9/10 14/3 14/10
 14/13 15/17 15/17 16/15 19/6
docket [1]  1/5 13/23
does [5]  8/25 13/7 14/13 14/18 17/3
doesn't [1]  13/8
doing [3]  14/20 16/2 17/23
don't [3]  8/15 15/1 15/1
done [1]  11/21
download [1]  7/13
downloaded [1]  6/9
```

## D

**Dr. [12]** 8/6 8/12 14/7 9/1 9/18 8/25 10/6 10/7
10/9 10/11 11/25 12/4
**Dr. Levine [11]** 8/6 8/12 8/17 9/1 9/18 9/25 10/7
10/9 10/11 11/25 12/4
**Dr. Levine's [1]** 10/5
**drafted [1]** 7/7
**Drive [1]** 1/18
**during [4]** 3/5 4/13 5/1 11/8

## E

**each [6]** 6/23 9/12 10/8 12/5 14/12 14/22
**ECF [2]** 13/5 13/23
**effect [1]** 13/24
**either [2]** 14/1 15/4
**else [1]** 16/7
**employing [1]** 10/2
**end [6]** 5/6 5/8 7/10 11/16 12/25 13/5
**enemy [1]** 2/19
**enforcement [1]** 11/6
**ensure [1]** 9/6
**entitled [1]** 19/9
**erroneous [2]** 9/14 13/19
**erroneously [1]** 3/13
**error [1]** 13/2
**errors [1]** 12/8
**ESQUIRE [3]** 1/14 1/17 1/20
**establish [1]** 5/20
**establishes [1]** 5/23
**estimated [1]** 15/7
**even [8]** 2/20 6/3 7/12 7/14 9/11 11/15 12/8 13/14
**every [1]** 2/21
**everybody [2]** 8/15 16/10
**evidence [3]** 3/3 4/3 4/20
**evidentiary [1]** 9/8
**Excel [14]** 6/12 7/22 8/4 8/7 8/20 8/22 9/2 9/4
9/17 9/19 9/22 10/8 10/21 13/10
**exception [1]** 12/20
**Exchange [1]** 1/21
**exclusionary [1]** 12/20
**executed [1]** 3/3
**exist [1]** 8/11
**expect [1]** 5/1
**expected [2]** 7/12 7/14
**expert [4]** 9/13 9/15 9/21 9/25
**expert's [1]** 10/3
**explained [5]** 8/6 8/12 8/23 9/1 9/25
**explanation [2]** 4/3 10/5
**explanations [2]** 11/1 11/2
**expressly [1]** 6/4
**extend [1]** 13/1
**extension [1]** 9/2

## F

**F.2d [1]** 5/8
**F3.d [5]** 4/21 4/23 5/5 5/21 5/25
**faces [1]** 3/4
**fact [3]** 3/20 7/18 8/11 12/1 12/4 13/16
**factful [1]** 10/18
**facts [2]** 5/19 8/1
**factual [2]** 6/2 6/16
**faith [1]** 12/20
**false [3]** 4/16 5/2 12/1
**faults [1]** 4/1
**Federal [3]** 1/24 19/4 19/17
**file [3]** 6/23 7/13 9/12
**files [20]**
**filter [1]** 10/2
**filters [2]** 9/5 9/11
**FINCI [3]** 1/17 1/18 2/12
**find [1]** 3/13
**finding [5]** 5/15 9/21 13/20
**findings [3]** 6/2 6/16 10/18
**fine [2]** 15/21 16/8
**first [3]** 4/14 4/24 8/7
**fit [1]** 17/6
**five [4]** 8/22 9/18 9/20 15/12
**following [1]** 6/1
**followup [1]** 17/18
**foregoing [1]** 19/7
**format [1]** 19/9
**forthright [1]** 10/19
**found [2]** 12/19 13/5
**foundational [1]** 5/11
**four [2]** 16/18 16/22
**fourth [5]** 4/22 4/23 5/9 5/25 16/19
**Franks [9]** 2/17 3/9 4/11 4/13 5/13 5/23 6/1 12/14
13/20
**Freenet [12]** 3/21 3/24 6/5 6/19 7/5 7/8 7/15 7/19
8/4 8/19 10/21 11/3
**fruits [1]** 4/10
**function [1]** 10/2
**functionary [1]** 11/10
**functions [1]** 11/19
**future [1]** 11/6

## G

**Gar [1]** 2/12
**GARY [1]** 1/14
**gavels [1]** 14/17
**generated [3]** 6/19 9/1 11/3
**George's [1]** 5/24
**get [4]** 2/20 14/10 16/13 17/16
**give [1]** 14/11
**given [1]** 8/18
**go [1]** 6/17
**going [8]** 2/23 2/24 3/15 6/17 14/1 14/2 15/9 17/15
**gone [1]** 16/15
**good [8]** 2/3 2/8 2/10 2/11 2/14 2/19 12/19 17/10
**Government [3]** 2/4 12/3 13/9
**grant [1]** 14/1
**granted [1]** 3/9

## GREENBELT [4]** 1/2 1/15 1/19 1/25

**had [25]**
**hallmarks [1]** 9/18
**has [5]** 3/6 11/21 12/3 13/9 16/15
**have [12]** 2/3 9/2 11/20 13/2 13/25 14/2 14/8 14/18
15/1 15/1 17/10 17/20
**haven't [1]** 14/9
**having [1]** 17/3
**he [23]**
**hearing [6]** 2/17 3/10 6/1 6/17 8/6 8/24
**hearings [3]** 3/6 9/8 11/23
**held [1]** 17/8
**here [3]** 5/17 8/15 13/12
**hereby [1]** 19/6
**Herring [4]** 12/17 12/19 13/8 13/17
**hide [1]** 11/7
**high [1]** 13/12
**his [16]** 3/3 3/19 6/4 6/6 7/2 7/5 7/8 8/4 8/17 9/1
9/16 10/6 10/20 11/12 11/24 13/1
**holidays [1]** 15/24
**home [2]** 3/4 3/14
**Honor [16]** 2/9 2/11 14/15 14/24 15/19 15/25 16/6
16/21 16/23 17/1 17/9 17/12 17/20 17/21 18/3 18/4
**HONORABLE [2]** 1/10 18/6
**hope [1]** 9/16
**hops [1]** 7/6
**Houlon [1]** 1/18
**how [8]** 4/2 4/3 7/20 9/4 11/10 14/22 17/8 17/11
**However [1]** 9/25

## I

**I'll [3]** 10/10 16/13 18/1
**I'm [9]** 2/18 2/24 3/15 6/17 9/16 14/3 15/6 15/15
15/17
**ICACCOPS [2]** 3/21 6/5 6/8 8/4 8/13 10/21
**idea [1]** 11/10
**identified [3]** 8/14 9/18 10/6
**ignorance [1]** 13/14
**images [1]** 3/14
**imagine [1]** 15/12
**improperly [1]** 13/15
**inaccuracies [1]** 8/10
**included [3]** 6/6 7/19 12/8
**including [1]** 15/11
**incorporated [1]** 3/7
**independently [2]** 10/11
**indicated [1]** 6/20
**inform [2]** 9/16 16/10
**information [13]** 4/2 4/16 4/25 5/18 6/6 7/1 7/9
7/18 7/19 10/20 11/7 11/15 11/20
**intentionally [1]** 4/15
**interest [20]**
**interval [1]** 19/3
**investigative [1]** 13/16
**IP [21]**
**is [25]**
**issue [2]** 3/11 4/18
**issues [1]** 17/23
**it [19]** 5/15 6/10 6/12 6/18 11/14 12/24 13/8 14/1
14/1 14/2 14/11 14/18 15/4 15/15 16/24 16/25 17/3
17/13 17/23
**it's [6]** 2/20 2/22 15/9 16/9 17/6 17/19
**itself [1]** 6/17
**Ivy [1]** 1/14

## J

**joining [1]** 16/7
**JR [1]** 1/14
**judge [8]** 1/10 4/5 4/18 5/4 7/10 10/23 10/24 11/20
**Judicial [1]** 19/10
**jury [1]** 15/12
**just [4]** 11/21 13/24 15/6 16/9

## K

**Keep [1]** 17/23
**kept [1]** 11/4
**knew [1]** 5/9
**know [4]** 2/16 2/22 9/4 16/15
**knowing [1]** 7/20
**knowingly [1]** 4/24
**knowledge [1]** 13/4
**knows [1]** 8/15

## L

**lack [1]** 13/18
**Lane [1]** 1/14
**language [4]** 7/5 7/8 7/11 10/25
**last [4]** 2/15 12/16 15/17 15/20
**law [1]** 11/6
**least [1]** 17/17
**leave [1]** 3/22
**led [1]** 4/18
**LEEPER [4]** 1/24 19/4 19/15 19/16
**left [1]** 2/13
**length [1]** 15/7
**let [1]** 2/13
**let's [1]** 14/20
**level [1]** 11/12
**Levenstein [1]** 1/17
**Levine [11]** 8/6 8/12 8/17 9/1 9/18 9/25 10/7 10/9
10/11 11/25 12/4
**Levine's [1]** 10/5
**like [1]** 14/22
**likely [4]** 4/9 6/14 6/22 10/9 10/16 11/1 12/10
13/13
**limine [1]** 14/4
**line [2]** 8/25 14/10
**linked [1]** 3/14
**little [1]** 11/9

## live [1]** 9/6
**LLC [1]** 1/18
**long [1]** 13/2
**looking [1]** 2/23
**Looks [1]** 17/10

## M

**made [5]** 4/14 4/15 9/25 12/7 13/20
**magistrate [2]** 5/3 11/20
**make [3]** 13/17 14/13 17/13
**makes [1]** 6/1
**manipulating [1]** 9/19
**many [1]** 11/22
**MARYLAND [3]** 1/1 1/25 19/6
**material [4]** 4/16 4/17 4/25 5/13 11/16 12/6
**materiality [1]** 5/10
**materially [3]** 3/12 3/18 4/16
**mathematical [2]** 8/17 10/12
**matter [3]** 13/8 13/17 19/9
**max [1]** 15/12
**may [5]** 11/20 12/20 12/23 13/25 14/2
**MD [3]** 1/15 1/19 1/22
**me [3]** 14/7 14/13 16/2
**mean [1]** 16/15
**meaningfully [1]** 8/16
**meant [2]** 6/22 7/18
**meet [1]** 14/23
**Meridian [1]** 1/21
**MICHAEL [2]** 1/14 2/8
**might [5]** 12/20 12/24 14/5 16/18 16/20
**Migliani [2]** 9/16 10/6
**milestone [1]** 7/4
**Miller [1]** 5/24
**Mills [26]**
**Mills' [5]** 3/23 4/6 6/8 12/8 13/18
**mindful [1]** 17/4
**minimum [1]** 7/13
**misleading [2]** 5/6 5/7
**misleading [1]** 5/3
**misled [2]** 3/12 4/5
**misstatements [1]** 4/17
**mistakes [2]** 10/1 10/1
**misused [1]** 8/7
**more [11]** 4/9 5/13 6/14 6/22 10/9 10/16 11/9 11/20
14/3 14/5 15/9
**MORGAN [3]** 1/14 2/8 16/2
**most [1]** 3/9
**motion [5]** 2/16 3/2 13/22 15/3 17/15
**motions [1]** 2/24
**Mr. [21]**
**Mr. Migliani [2]** 9/16 10/6
**Mr. Morgan [1]** 2/14
**Mr. Pobre [11]** 2/12 3/4 3/9 3/17 3/22 4/1 4/5 4/10
11/21 13/1 17/22
**Mr. Pobre's [5]** 3/2 3/14 12/16 13/8 13/22
**Mr. Ulander [2]** 14/16 14/20
**much [4]** 6/4 7/4 10/24 14/22
**Multiple [1]** 16/17
**must [10]** 4/11 4/14 5/1 5/6 5/10 5/13 5/15 5/18
8/22 12/14
**my [5]** 2/16 2/20 3/1 11/6 13/24

## N

**name [1]** 9/16
**nature [1]** 10/19
**nearly [1]** 7/6
**necessarily [1]** 13/7
**necessary [1]** 5/15
**need [4]** 11/13 14/3 14/5 15/3
**needed [1]** 6/24
**negate [1]** 12/12
**negating [1]** 4/7
**negligence [1]** 12/22
**nevertheless [1]** 5/4
**new [1]** 16/15
**next [5]** 2/24 5/19 14/2 14/7 14/13
**no [14]** 5/23 7/17 11/10 12/14 13/4 13/20 15/11
16/1 16/4 16/4 17/20 17/21 17/23 17/25
**node [2]** 7/15 9/7
**not [33]**
**November [5]** 15/18 15/20 17/14 18/1 19/12
**November 29 [1]** 17/14
**now [5]** 14/10 14/16 15/3 17/16 18/6
**number [1]** 1/5 2/6 13/5 16/20 16/22
**Numbers [1]** 13/23

## O

**objection [2]** 17/20 17/21
**observations [5]** 3/19 4/6 8/3 9/6 10/20
**obtain [2]** 3/24 6/25
**obtained [3]** 4/1 3/3 7/22 8/8
**obviously [2]** 6/16 11/24 16/7
**occurred [1]** 12/15
**October [1]** 1/11
**office [1]** 16/1
**officer [1]** 5/19
**officers [1]** 12/24
**Official [4]** 1/24 19/1 19/4 19/17
**okay [9]** 2/14 14/9 15/14 15/17 15/22 16/9 17/2
17/13 17/22
**omission [1]** 3/22 5/2 5/11 5/13
**omissions [6]** 4/18 5/6 11/16 12/6 12/8 12/12
**omitted [9]** 3/18 4/16 4/25 5/19 7/11 8/1 10/20
10/25 11/15
**omitting [2]** 4/1 5/17
**Once [1]** 7/5
**one [2]** 13/17 15/2
**only [1]** 3/10
**opportunity [2]** 14/11
**options [1]** 11/2
**oral [1]** 13/24
**orally [1]** 2/18

## O

order [4] 2/2 13/24 14/5 16/2
ordered [1] 7/9
other [4] 7/2 12/6 14/12 14/22
our [4] 2/12 9/8 16/19 17/19
out [2] 3/22 7/25
outside [1] 9/20
over [1] 16/24

## P

p.m [3] 1/11 17/14 18/8
page [1] 19/9
paperless [1] 13/24
paperwork [1] 7/3
pardon [1] 15/19
Parkway [1] 1/21
participants [1] 3/24
parties' [1] 17/16
pass [6] 6/21 6/22 8/9 8/21 9/11 9/21
passing [1] 7/23
paste [1] 7/21
pasted [1] 6/12
PAULA [5] 1/10 1/24 19/4 19/15 19/16
peer [2] 8/16 11/24
peers [1] 7/13
pending [1] 3/2
penned [1] 2/21
percent [7] 7/12 7/14 8/18 9/3 10/10 10/13 12/4
perfection [1] 2/19
personal [3] 3/19 8/3 10/20
pick [1] 14/10
pincite [1] 6/18
place [1] 4/19
Plaintiff [2] 1/5 1/13
plug [1] 7/22
POBRE [13] 1/7 2/6 2/12 3/4 3/9 3/17 3/22 4/1 4/5 4/10 11/21 13/1 17/22
Pobre's [5] 3/2 3/14 12/16 13/8 13/22
police [1] 12/21
poorly [1] 11/10
pornography [5] 3/5 3/15 3/25 6/10 6/11
positions [1] 17/16
positive [1] 12/1
potentially [1] 5/14
predicts [1] 8/18
prepared [5] 2/18 7/2 14/3 15/6 16/25
present [2] 2/12 13/3
presented [1] 11/9
Presently [1] 3/2
pretrial [2] 17/10 17/23
previous [1] 13/20
Prince [1] 5/24
principally [1] 3/17
prior [2] 3/7 9/8
probable [3] 3/13 4/8 4/19 4/25 5/14 5/15 5/20 5/23 8/2 11/5 11/17 12/12 13/3
probably [1] 15/11
problem [1] 15/2
proceed [1] 2/23
proceedings [1] 19/8
process [1] 11/8
produce [1] 13/18
product [1] 3/20
program [1] 10/24
programs [3] 3/20 6/5 11/11
prong [3] 4/24 5/10 11/17
properly [1] 13/10
propose [1] 17/3
provided [1] 13/12
Pulley [2] 4/21 5/5
pursuant [3] 3/3 4/11 19/6
put [2] 14/4 14/4
PX [2] 1/6 2/7
PX-19-348 [1] 2/7

## Q

quote [22]
quoting [2] 4/22 5/24

## R

raw [1] 10/12
re [1] 15/5
re-arraignment [1] 15/5
reach [1] 11/14
read [1] 7/11
really [3] 8/16 10/4 11/13
reasonably [1] 7/23
reasons [1] 2/20
rebuttal [1] 10/4
receive [1] 8/21
received [2] 9/11 9/21
recently [1] 3/9
reckless [2] 5/7 12/24
recklessly [1] 4/15 4/25
recklessness [2] 11/14 12/23
record [1] 17/16
recorded [1] 17/13
recurring [1] 12/21
reference [1] 3/23
Referencing [1] 4/21
regard [4] 9/15 11/13 17/17 17/24
regulations [1] 19/10
related [1] 3/4
Relatedly [1] 4/1
relating [1] 7/24
release [1] 17/23
relevant [2] 13/17 13/19
reliability [2] 8/20 9/19 11/11
reliable [3] 4/7 12/1 13/10
reliably [1] 9/23
relied [3] 9/13 11/11 11/18

rely [1] 12/24
remaining [1] 3/11
report [2] ... 
reportedly [1]
Reporter [4] 1/24 19/1 19/4 19/17
represent [1] 7/12
represented [1] 10/15
request [4] 3/24 8/14 8/21 17/19
requested [2] 3/14 4/4 4/9 6/14 6/23 7/24 8/2 8/19 9/23 10/13 10/16 12/5 12/10
requester [1] 12/13
requestor [1] 13/14
requests [1] 9/5
required [1] 7/13
resolves [1] 14/17
result [1] 12/1
results [4] 8/9 9/1 12/12 13/19
reveal [1] 8/10
revealed [2] 6/8 11/12
review [2] 6/8 8/17
reviewed [1] 11/24
reviewing [9] 3/12 4/5 4/18 5/3 7/8 7/10 10/23 11/4 11/23
RICHARD [2] 1/17 2/11
right [7] 9/16 14/16 15/17 16/13 16/24 17/2 17/22
rise [1] 18/6
risk [2] 5/3 5/4
ROBBINS [2] 1/20 2/12
Roundup [4] 3/21 6/5 8/14 10/21
rule [1] 12/20
ruling [1] 13/24
run [1] 5/4

## S

said [1] 11/9
same [3] 9/2 9/7 10/1
saying [1] 9/16
says [2] 4/5 10/9
scheduling [1] 14/5
score [2] 3/17 15/6
search [8] 2/17 3/3 3/6 3/11 4/10 4/13 6/6 7/2
searched [1] 4/19
seat [1] 3/2
second [4] 4/17 5/10 10/7 11/17
secure [1] 5/2
seized [2] 3/3 3/5
selection [1] 15/12
sense [1] 14/14
set [3] 15/4 16/9 16/19
setting [1] 15/15
several [2] 3/6 6/9
share [2] 7/12 7/14
short [2] 8/1 12/12
should [1] 16/8
shouldn't [1] 10/3
show [3] 5/1 5/11 9/17
showings [1] 4/14
shown [1] 13/2
shows [1] 13/12
similar [1] 10/1
simply [2] 7/21 9/13
Since [1] 17/19
situation [1] 12/22
so [18] 2/18 3/1 7/25 9/10 9/21 10/3 10/4 12/8 12/14 14/7 14/10 14/20 15/6 15/15 16/8 16/22 18/1
software [2] 4/2 7/20
some [3] 8/24 14/4 16/10
someone [1] 16/7
Sorry [1] 16/3
sort [1] 13/25
speedy [2] 14/18 17/17
spreadsheet [19] 6/13 6/19 7/22 8/5 8/8 8/10 8/12 8/22 8/22 9/2 9/4 9/12 9/19 9/20 9/22 10/2 10/8 10/22 13/10
squarely [1] 13/17
stands [1] 18/7
start [1] 17/6
state [1] 6/4
stated [2] 4/6 11/18
statement [3] 4/16 5/2 12/7
STATES [13] 1/1 1/4 1/10 1/25 2/5 2/8 4/21 4/22 5/8 12/17 16/25 19/5 19/5 19/11
status [4] 1/9 14/11 14/19 17/18
stenographically [1] 19/8
stenographically-reported [1] 19/8
step [2] 2/25 14/7
steps [1] 14/2
still [3] 5/20 5/22 9/21
story [1] 16/14
subject [1] 3/6
subjective [1] 13/4
subjectively [1] 5/2
submissions [1] 8/24
substantive [1] 10/25
such [7] 6/24 7/1 8/8 11/7 11/15 11/16 12/6
suggested [1] 12/22
Suite [1] 1/14 1/18 1/21
summary [5] 6/20 7/5 7/8 7/19 11/3
supervisor [2] 7/9 7/9
support [1] 11/25
supporting [1] 8/1
suppress [3] 4/17 3/2 13/23
suppressed [2] 4/11 4/14
suppression [1] 12/18
Supreme [1] 12/19
surmise [1] 7/24
surprising [1] 13/1
surveillance [2] 4/2 6/5
suspected [2] 3/25 6/11
swear [1] 7/25
system [1] 12/25
systemic [3] 12/22 13/2 13/18

## T

Taken [1] 5/22
takes [1] 5/22
taking [1] 9/17
talk [7] 2/24 14/18 14/20 14/22 15/6 15/15 18/1
target [2]
team [2] 8/18 11/24
technical [2] 10/25 11/2
tell [3] 10/23 14/7 14/13
testified [2] 7/17 8/6
testimony [1] 11/23
tests [1] 8/20
than [8] 4/9 5/13 6/14 6/22 10/9 10/16 11/9 15/10
thank [6] 2/14 16/12 17/12 18/3 18/4 18/5
Thanksgiving [1] 17/4
that [97]
that's [6] 5/5 5/21 6/10 12/25 13/5 15/11
their [1] 3/24
then [7] 7/23 8/25 13/4 14/12 15/3 15/17 17/15
there [5] 5/23 10/4 13/20 13/25 16/7
there's [2] 16/10 17/16
these [6] 6/23 6/16 7/11 10/18 11/22 13/15
they [2] 4/7 5/7
thing [1] 10/7
things [1] 8/7
think [6] 2/15 15/11 16/8 16/18 16/18 16/20
Third [1] 10/11
this [20]
those [6] 4/17 5/18 9/9 9/10 11/2 13/22
though [3] 6/3 9/11 13/14
three [22]
through [2] 6/18 16/16
throughout [2] 3/15 11/22
thus [6] 4/10 9/11 9/22 10/14 12/3 13/14
time [5] 2/15 14/3 14/5 14/22 16/1
together [1] 2/15
toll [2] 15/3 17/16
tolling [1] 17/17
tool [16] 6/13 6/19 7/22 8/5 8/8 8/10 8/12 8/20 8/22 9/4 9/17 9/22 10/2 10/8 11/5 13/10
tools [3] 3/23 10/22 13/16
total [1] 7/14
totally [1] 10/19
traditional [1] 12/23
trained [4] 6/24 7/21 11/10 13/15
training [1] 13/18
transcript [4] 1/9 6/17 19/7 19/9
traveling [2] 15/24 17/4
treatment [1] 13/8
trial [7] 14/4 14/18 15/5 15/7 15/15 17/6 17/17
tries [1] 13/1
true [1] 19/7
try [1] 16/25
two [5] 3/20 4/14 6/4 13/25 15/3
typo [1] 2/21

## U

U.S [2] 4/11 12/17
U.S.C [1] 19/6
Ulander [2] 14/16 14/20
ultimate [1] 12/9
ultimately [2] 11/13 13/8
Um [1] 15/8
under [1] 5/13
underlying [1] 8/9
undermined [1] 5/11
understand [1] 11/19
understanding [2] 7/18 15/2
understood [1] 6/22
UNITED [3] 1/1 1/4 1/10 1/25 2/5 2/8 4/21 4/22 5/8 12/17 16/25 19/5 19/5 19/11
unreliable [2] 9/17 12/25
until [1] 17/17
up [1] 17/23
upset [1] 12/9
use [6] 3/23 8/4 9/4 10/20 10/21 11/5
used [4] 6/4 7/4 10/8 13/10
using [3] 7/7 8/19 13/15

## V

values [1] 9/20
variables [2] 8/23 8/23
verified [1] 4/5
verify [3] 6/13 9/23 10/12
view [1] 11/7
violation [3] 5/23 12/15 13/21
vs [1] 1/6

## W

Walker [1] 1/18
want [6] 14/5 14/10 14/13 14/18 15/17 17/4
warrant [14] 2/17 3/3 3/12 3/19 4/14 4/18 5/22 6/6 6/25 7/2 7/3 7/25 11/8 12/25
was [12] 3/10 5/1 6/20 8/3 9/17 12/7 12/13 13/13 13/20 13/25 14/1 14/2
wasn't [2] 10/8 9/8
way [1] 3/8
we [14] 2/15 2/18 6/10 14/8 14/10 14/16 14/18 14/23 15/4 15/6 15/15 16/9 16/18 17/20
we'll [4] 2/24 13/23 16/22 17/13
we're [1] 15/15
Wednesday [1] 1/11
week [5] 15/10 15/16 15/17 15/20 16/8
well [2] 16/24 17/23
were [11] 2/15 3/5 3/20 4/6 4/7 6/10 8/23 9/13 11/13 11/16 12/6
Wharton [4] 4/22 5/12 5/21 5/24
what [8] 6/10 7/10 10/5 11/12 14/3 16/2 16/2 16/14
when [6] 9/7 9/21 13/10 15/6 15/15 17/3
where [2] 4/14 14/10
Whereas [1] 5/17

**W**

**whether [6]**  3/11 4/24 5/7 5/20 8/18 11/20
**which [8]**  3/7 3/10 5/4 8/6 11/2 15/3 15/8 15/17
**while [3]**  8/8 11/12 14/20
**who [1]**  16/15
**whoever [1]**  16/24
**whose [1]**  11/19
**why [1]**  11/1
**will [6]**  2/4 14/11 16/1 16/7 16/8 16/25
**without [1]**  4/18
**word [2]**  7/6 7/6
**worked [1]**  11/11
**workings [1]**  11/21
**works [2]**  4/2 7/21
**would [14]**  2/16 2/18 5/3 5/7 5/20 7/10 12/9 14/22
  15/2 15/4 15/9 15/12 15/14 15/21
**written [2]**  2/22 8/23
**wrote [1]**  10/24

**X**

**XINIS [1]**  1/10

**Y**

**Yeah [3]**  15/1 15/14 16/11
**Yes [3]**  14/15 15/21 16/23
**you [31]**
**you're [2]**  16/4 17/22
**your [17]**  2/9 2/11 14/15 14/24 15/19 15/19 15/25
  16/6 16/20 16/23 17/1 17/8 17/12 17/19 17/21 18/3
  18/4
**yourselves [2]**  14/12 14/23

**Z**

**ZED [2]**  1/7 2/6